**SO ORDERED.**

**SIGNED April 19, 2005.**



_____
**HENLEY A. HUNTER
UNITED STATES BANKRUPTCY JUDGE**

_____

### UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

| | |
|---|---|
| **IN RE: GARY SCHIMMEL**<br>        **DEANNA SCHIMMEL**<br>             **(Debtors)** | **CASE NO. 99-31132** |
| **GARY & DEANNA SCHIMMEL**<br>             **(Plaintiff)** | **ADVERSARY NO. 04-03042** |
| **VERSUS** | |
| **BOMBADIER CAPITAL, INC.**<br>             **(Defendant)** | |

### REASONS FOR DECISION

This matter comes before the Court on a Motion for Summary Judgment by Bombadier Capital, Inc., Defendant. This is a Core Proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K) (L) and (O). This Court has jurisdiction pursuant to 28 U.S.C. §1334 and by virtue of the reference by the District Court pursuant to Local District Court Rule 83.4.1 incorporated into Local Bankruptcy Rule 9029.3. No party has sought to withdraw the reference, nor has the District Court done so on its own motion. This Court makes the following Findings of Fact and Conclusions of

Law in accordance with F.R.B.P. 7052. Pursuant to these reasons, Motion for Summary Judgment and the Motion to Vacate Order Allowing Debtors to Incur Debt are **GRANTED.**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Debtors filed a voluntary petition under Chapter 13 on July 1, 1999. Defendant Bombadier is listed as a secured creditor holding a secured claim on debtors' 1997 Gateway Mobile Home. The claim is listed on Schedule D in the amount of $60,595.00. The collateral was valued at $25,000.00 and the "Unsecured Portion" is listed at $35,596.00. Debtors filed a Chapter 13 Plan on July 1, 1999, proposing to pay Bombadier directly, showing that the lender's claim was "[S]ecured Only by a Security Interest in Debtors' Principal Residence (Value is not an issue)." This section of the plan advises that this treatment is in accordance with 11 U.S.C. 1322(b)(2) & (5). Debtors reflected a monthly payment of $549.82 on this debt. Debtors also proposed to pay other allegedly secured claims affecting a computer, a storage building, and a Honda vehicle directly, bifurcating those claims into secured and unsecured portions. Debtors listed an unsecured claim due Bombadier in the amount of $35,576.00 under the portion of the plan dealing with "General Unsecured Claims." They also listed the "unsecured" balances of the other secured creditors, projecting a 1.8 per cent dividend to unsecured creditors, with no interest, which percentage might vary based upon the claims that were actually filed. Debtors asserted this treatment was proper since the unsecured claimants would receive a dividend exceeding the amounts such creditors would be paid if the debtors were to liquidate under Chapter 7.[1]

The Standing Chapter 13 Trustee objected to the plan, expressly objecting to the bifurcation

---

[1] Debtors did not schedule any real estate, thus, Bombadier was not entitled to protection under 11 USC 1322(b)(2).

of the secured claims and the debtors' proposals to pay the secured creditors direct, "a treatment not within the law or spirit of Law."[2] Debtors filed an amended plan and Schedule J (Expenses) to pay the payments on the computer, storage building and Honda vehicle through the Trustee. Debtors noted they had omitted creditors from their filing and "problems" had reportedly occurred resulting from the filing by the Louisiana Department of Revenue and Taxation. In this amendment, "[s]chedule J is further amended to show unsecured portion of home mortgage to be paid direct by the debtor in the amount of $6.00 per month and deletes the unsecured payment from Section 1B9b of the plan." More problems arose. An order was entered on September 22, 1999, requiring debtors to further "amend the plan and pay pursuant to the amendment" and furnish proof of insurance coverage to Ford Motor Credit (which held the mortgage on the Honda vehicle), dismiss the case voluntarily, or convert to a Chapter 7 case. The case was dismissed on October 20, 1999. Debtors then sought to have the dismissal reconsidered and to have the case reinstated. An order was entered on December 2, 1999, granting that request, but requiring them "file and notice an amended 'Four Corners' Plan and Schedules I & J." Any such plan was to be noticed for a hearing to be held if and only if an objection was filed. On December 10, 1999, debtors filed an amended plan again treating Bombadier as secured under 1322(b)(2), expressly asserting "Value is not an issue." The payment proposed on the "home mortgage" was increased by $6.00 to $555.82. No unsecured balance is listed for Bombadier. This plan was confirmed without objection on January 12, 2000.

Bombardier filed a proof of claim on July 26, 1999, asserting a balance of $60,878.92 as of the date of filing of the case, secured by the manufactured home. The claim values that collateral at

---

[2]Except as provided in Section 1322(b), a plan may modify the rights of holders of secured claims. The Trustee may be entitled to his commission on direct payments by the debtor on secured claims. *Foster v. Heitkamp (In re: Foster)*, 670 F.2d 478 (5th Cir. 1982).

$60,878.92. The Chapter 13 Trustee filed his Final Report and Account of Administration and a Notice of Plan Completion and Order Setting Discharge on July 8, 2004. No objections were filed. Debtors received a Discharge After Completion of the Plan on September 7, 2004.

This complaint was filed on September 23, 2004. Debtors seek to recover damages for the alleged violation of the discharge injunction by Bombadier. Debtors seek to have the lien released and to recover damages (including punitive damages) relating to an alleged report by Bombadier to a "credit bureau" that the account was in arrears in May 2004 and for "forced placed insurance" allegedly improperly charged to their account. Bombadier answered the complaint, alleging inter alia that any insurance was placed only after it received notice of cancellation and that its claim was in fact not bifurcated under debtors' plan as confirmed and that its lien was retained. It argues that its claim was not in fact "crammed down," and that the plan as confirmed must be given res judicata effect. Thus, it avers its refusal to release its lien is reasonable and that debtors have no claim upon which relief can be granted.[3] Debtors also obtained an Order on July 21, 2004, in the related bankruptcy case authorizing them to incur secured debt. Bombardier sought to vacate the order by Motions filed November 1, 2004, and supplemented November 24, 2004. Debtors opposed the relief requested. The proceedings to vacate the Order were consolidated with the instant Adversary matter by Order of the Court dated November 30, 2004, as amended.

---

[3]Bombardier filed a Motion for Relief from the Stay in the related bankruptcy case on March 23, 2003, alleging that debtors were past due on the payments to movant under the contract which granted them a "security interest" in the manufactured home. Debtors responded, alleging they were current. A consent order was entered on April 23, 2004, providing for *ex parte* relief in the event of a default. At no time in the response did debtors allude to the alleged bifurcation of the claim, nor did Bombardier assert that value was an issue.

4

**Applicable Law**

Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings pursuant to Bankruptcy Rule 7056, provides in pertinent part: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." "Although summary judgment is a useful device, it must be used cautiously or it may lead to drastic and lethal results." *Murrell v. Bennett*, 615 F.2d 306, 309 (5th Cir. 1980).

In ruling on a motion for summary judgment, the evidence should be considered in the light most favorable to the non-movant. *Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir. 1983). However, the opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986).

It is well-settled that liens pass through bankruptcy unaffected. *Matter of Howard*, 972 F.2d 639 (5th Cir. 1992)*; In re Simmons*, 765 F.2d 547 (5th Cir. 1985). Here, the confirmed plan afforded Bombardier the status of a creditor whose claim could not be impaired under 11 USC 1322(b)(2). Moreover, the confirmed plan provided Bombardier's lien would be retained. Whether it was entitled to those protections is disputable. The fact is that the confirmed plan did not bifurcate the claim into secured and unsecured portions. Debtors are bound by the Order of Confirmation. 11 U.S.C. §1329. Moreover, debtors failed to object to the proof of claim filed by Bombardier asserting its fully unsecured status. The decision in *Howard*, expressly places a duty on debtors to object to creditors' claims if they intended to reduce the amounts of same. *Matter of Howard*, 972 F.2d 639. Further, debtors did not raise the amount issue in their response to Bombardier's motion to lift stay

or in the agreed order concerning future defaults.

In short, the Court finds no state of facts on which the debtors might prevail here. The Complaint is totally without merit. Further, Bombardier is entitled to relief on its motion to vacate the Order to incur debt.

## CONCLUSION

The Motion for Summary Judgment and the Motion to Vacate Order Allowing Debtor to Incur Debt are **GRANTED**. A separate and conforming order will enter in both the case and the adversary proceeding. The claims for attorney fees and costs by both parties are **DENIED.**

# # #